O’Neall, J.
dissenting.
In this case, I feel that it is due to myself, as well as to the case, that the reasons of my dissent should be stated, so that it may be seen how far I may be in; if indeed in error I am at all.
^ None of the various grounds of appeal need be noticed, except that which has called for the repeated arguments which this case has received. It is whether 1 was in error in ruling, that when a negro had enjoyed freedom for twenty years, since 1820, the jury might presume that she had been legally manumitted and set free by an Act of the Legislature,
*547 This instruction was based upon the doctrine, acknowledged universally in our Courts, that twenty years stands in place of that ancient unremembered period, beyond the reign of the 1st Richard, which, in England, was regarded as that “ beyond which the memory of man runneth not to the contraryIn McClure v. Hill, 2d Law Rep. by Mill, 424, the Court, by one of its greatest and most distinguished members, (Judge Cheves,) laid down the rule that, after 20 years’possession or enjoyment of lands, a grant was to be presumed. This was, I think, well settled even before that case; and not only in reference to grants, but also as to prescriptive rights, and all other matters to be presumed from lapse of time, it has been ever since uniformly followed. After a lapse of twenty years’ possession of lands, or enjoyment of an easement or right, the legal presumption of “ omnia presumuntur esse vite acta?’ necessarily arose. “The extent to which Courts of Justice will presume in support of Acts, depends very much whether they are favored by the law or not.” Best on Presumptions, p. 74, chap. 2d, 61. In conformity to this rule, it was held in Columbia at our last sittings, in McCarty v. McCarty, that a divorce, even after a lapse of forty years’separation, and exclusive possession in the wife, couljl not be presumed. The reason is obvious; such a thing was contrary to the whole policy of our law : the Legislature never have passed an Act of Divorce, and hence no such presumption could arise. If this were a parallell case, of course that authority would conclude it. But the Legislature have admitted the possibility of manumission, by providing in the Act of 1820, “ that no slave shall hereafter be emancipated but by Act of the Legislature.” Act of 1820, 7 Stat. 459. In 1822, such an Act passed for one of the faithful and devoted servants, who revealed the contemplated insurrection of that year; and I hope the , Legislature of 48-49 will adorn their statute book, by an enactment in favor of the slave who stood by his master in the bloody issues of the late Mexican campaign. Indeed, I hope, I may be allowed to say, that after 27 years’ experience, under the Act of 1820, I think its policy so questionable, *548 that it ought to be repealed. A law evaded, as it is, and against which public sentiment, within and without the State, is so much arrayed, ought not to stand. It is better by far, that a wise and prudent system of emancipation, like that of 1800, should exist, rather than that unlicensed emancipation, according to private arrangement, should take place.
The rule, however, stated by Best, does not mean that presumptions may not arisé even where there are statutory restrictions j but when the law, the common law, does not favor a matter in aid of which a presumption is invoked, then it is, that the Court either will refuse to presume at all, or require a greater length oí time, or some facts indicative of its existence.
What is there in the policy of the law of South Carolina to forbid emancipation, by an owner, of a faithful, honest, good slave 1 Have we anything to fear from such a liberal and humane course 1 I should be sorry to believe that our domestic institution of slavery required any such restriction upon the rights of owners. Indeed, when any thing is pushed to extremes, injury is done by it; and that is now the case of the Act of 1820, and other kindred provisions in other Acts. They are continually thrust in our faces by those who undertake to meddle with matters which do not concern them, as evidence of our injustice, and our sense of error in our slave system. For one, I have no hesitation in declaring, that we ought todo right by repealing all such enactments, and that then we should have nothing to fear from anything which our meddling friends, in other States, may think proper to say or do against slavery. We are secure, when we can say. as one man, negro slavery, as it existed at the adoption of the Consti. tution, as it exists noto, is an institution to he regulated by the States in which il exists ; and is not to he touched by Congress or the other States, or their people. The motto of the Thistle, “ noli me tangeref ought to be ours on this subject.
Still, as I have already said, our duty is, to think and act right towards the beings who are our slaves. The first *549 thing which ought to be done, is to get back alongside of such men as C. J. Rutledge, who, in the case of the Guardian of Sally v. Beatley, 1 Bay, 262, in speaking of the purchase of a girl by another slave to set her free, asked the emphatic question, “ would a jury of the country say no ? He trusted not — they were too humane and too upright, he hoped, to do such manifest violence to so singular and extraordinary an act of benevolence.” This was the expression of the benevolent feelings which had been tried in the crucible of the revolution ; there was perhaps no very correct notion of law in the ruling of the case, yet it spoke what, I think, always belongs to Carolina — a love of mercy, of right, and a hatred of that which is mean or oppressive.
Until fanaticism and folly drove us from that position, the law of our State had uniformly favored emancipation by owners, of their slave property, with such limitations and guards as rendered the free negro, not a dangerous, but an useful member of the community, however humble he might be. It is time we should return to it, and say to all at home or abroad, we have nothing to fear from occasional emancipation. Every one knows, that the free ne-groes in South Carolina are far, very far, from being a class of people envied by our slaves. Generally, they are worse off in every respect. They throw themselves under the sheltering wing of some benevolent white man, and, instead of being- formenters of insubordination and rebellion among slaves, they pursue a directly contrary course.
But I have said enough on this head, more perhaps than the case called for.
The first question is, can freedom, from its enjoyment by a negro for twenty years, be presumed? It is unnecessary to reason about it, it has been so decided; in Miller v. Reigne. 2 Hill, 592, it was held that twenty years enjoyment of freedom by a negro, commencing before 1820, would create a presumption that a deed conformably to the Act of 1800 had been executed. The same doctrine was again laid down in the State v. Hill, 2d Spears, 150. There was in that case 33 years enjoyment of freedom, and the Court *550 said, “ it was exactly the case in which the legal presumption stood in the place of the deed, certificate of the magistrates and freeholders, the record of the deed and the office copy” required by the Act of 1800. So in the State v. Hardin, 2d Hill, 152, note, it was ruled that if a negro had the reputation of being free and was found in the possession of freedom, it was prima facie sufficient evidence that he was free.
The second question which now arises, is, since the Act of 1820, can a jury, who may find that a negro has been for twenty years in the enjoyment of freedom, presume an Act of the Legislature? What is to prevent it? An Act conferring freedom on a negro is nothing but a muniment of title; it is essentially a grant by the Legislature of cl fran fihise ; it stands, therefore, upon exactly a parallel ground to that of a grant of land, which we have seen may be presumed after a lapse of twenty years. That by searching the records, it would appear that no such Act passed, cannot affect the question, for two reasons: 1st. No such search was made and proved in this case; next if it had been, it would not alter the law. A grant of land could be shown in every case of presumption, by a search in the Secretary of State’s and Surveyor General’s offices, never to have existed, yet no one doubts, that notwithstanding such a search, twenty years possession would raise the presumption. In McClure v. Hill, 2 Con. Rep. by Mill, Cheves J. as the organ of the Court, speaking of a presumption of a grant from twenty years possession, said : “This rule of presumption is a safe one, as it is only applied where the possession is rightful, to invest that possession with a legal title; nor is it necessary that there should be evidence to impress belief on the mind to authorize this presumption.” So in Miller v. Reigne, 2d Hill, 593, which was the identical question before the Court, except that there a deed, executed with many legal solemnities, and just as capable of being found on record, if it existed, was to be presumed, instead of an Act of the Legislature. It was said, “the lapse of twenty years did well authorize the legal presumption of the regular execution of the deed of manumission required by the *551 Act of 1800.” In the same case, the rule, as stated by my brother Evans, in Hutchison v. Noland, 1 Hill, 222, was cited and approved. He said “I think it is clearly deducible from all the authorities, that presumptions are rules of law, which in themselves, are evidences of, or muniments of title, which a jury is as much bound to give effect to, as to a deed which is unimpeached.” If these authorities are to be relied upon, they clearly establish the rule, that time (20 years) is in place of any muniment of title necessary to give effect to a right of which a party is in possession. But it is said, an Act of the Legislature cannot be presumed. Best in his treatise on presumptions, p. 145, chap. 3d, sec. 109, says it may be. In Eldridge v. Knott and others, Cowp. 215, Lord Mansfield said, “ Lord Coke says somewhere that an Act of Parliment may be presumed.” The case of Crimes v. Smith, 12 Rep. 4, was the case of a vicarage, which was presumed to be endowed from lapse of time, under the maxim omnia jjresumuntur solemnitur esse acta, and I presume from it being referred to, as one of the authorities to prove that an Act of Parliament may be presumed, the ruling in it is regarded by English lawyers, as equivalent. But in the case oí Viscountess Stafford and Lewellen Skinn. 77, 78, the long sought for case will be found. In that case, it is said Farrar’s case was cited in the common pleas,.where Farrer made a title from the Black Prince, which could not be out of him but by an Act of Parliament, but yet, and for that the possession had gone otherwise ever since, the Court presumed, that there had been such an Act of Parliament, tho’ not now to be found The case of Howard v. Faber, 2nd McC., Ch. 446, certainly strongly sustains the same notion. For there the Court presumed a power in the ordinary which could only have been given by an Act of the Legislature. Yet from his having exercised it from the earliest times, it was thought to be legitimate to presume, that an Act had been passed, conferring the power.
After these authorities, I don’t see how it can be hereafter denied, that an Act of the Legislature, as a muniment necessary to confer private right, may be presumed, after a lapse *552 of twenty years. Nor can I see how such a presumption can be denied to a negro who has been for twenty years in the enjoyment of freedom. In the case before us, the bequest to the plaintiff shows that the slaves bequeathed to him, of whom Mary Anne was one, were “by no means to be considered in slavery.” In conformity to this, the plaintiff has suffered her to go at large, and be free for twenty years ! Is not the rule of law, that any thing necessary to give effect to the state {freedom,) in which we find the woman, is to be presumed? To my mind, reason and authority alike concur in making it plain that it is so. But it is said, you are not to presume against belief, and that with our knowledge of what has been done in the Legislature of South Carolina, we cannot believe such an Act has ever passed. If we stand on the cases in our own State, and believe in the decisions of our own Courts instead of those of Westminster Hall, there is no room to doubt, that lapse of time, (20 years,) is, as a rule of law, giving effect to a right, and belief is not necessary. The cases of McClure v. Hill, Hutchison v. Noland, Miller v. Reigne, and The State v. Hill, are full to that point. It is true that Best, in his treatise on Presumptions, chap. 3, sec. 110, p. 146, 147, says that the practice of advising juries to make artificial presumptions, was formerly carried too far, and several recent cases are cited, which maintain the doctrine that presumption cannot, arise, unless there be enough to create belief. I acknowledge that it is very possible those cases were decided right. For there are many cases in which the presumption ought not to arise, except as a matter of belief— such as cases of lost papers, accompanied by a possession of less than twenty years, but aided by other circumstances, which would show their existence. But it is unnecessary to cavil about the matter, for the jury here were told that they might not — that they were bound to presume the Act. This is exactly putting the matter where Bayley, J, placed it, as matter of belief, in Doe & Fenwick v. Reed, cited by Best. But if, as is supposed, it was still stronger put, in summing up the charge, that the jury ought to presume it, Still that was only matter of advice, not inconsistent with belief, and will very well stand the test under the rule stated by Best.'

New trial-ordered.